**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

MARLA SNYDER,                                  )
                                               )
                          Plaintiff,           )
                                               )
            v.                                 )          02:02cv0216
                                               )
TEAMSTERS LOCAL NUMBER 249,                    )
HBC SERVICE CORPORATION, and                   )
JEFFREY LAHEW,                                 )
                                               )
                          Defendants.          )

**MEMORANDUM OPINION AND ORDER**

Presently before the Court for disposition is the MOTION FOR SUMMARY

JUDGMENT filed by Defendant, HBC Service Corporation, with brief in support (*Document*

*Nos. 57 and 58 )*, and the Response and Brief in Opposition filed by Plaintiff, Marla Snyder,

(*Document Nos. 71 and 75*).

After careful consideration of Defendant's motion, the filings in support and opposition

thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court

finds that there is not sufficient record evidence upon which a reasonable jury could return a

verdict for Plaintiff, Marla Snyder on her federal and state claims of discrimination.  Therefore,

the Court will grant Defendant's' motion for summary judgment as to all federal and state claims

which allege discrimination and dismiss without prejudice the additional pendent state claims

alleged by Plaintiff, Marla Snyder.

**PROCEDURAL HISTORY**

On January 23, 2002, Plaintiff commenced this action by the filing of an eight-count Complaint against HBC Service Corporation ("HBC"), Local 249 and Lahew.  Plaintiff contends that she was a victim of sexual harassment and a hostile work environment caused by the actions of the Defendants.  Plaintiff also alleges that she was constructively discharged as a result of Defendants' actions in that she was forced to take a medical leave of absence from HBC as a result of the continuing harassment.

Defendant HBC filed a  Motion to Dismiss, which resulted in a number of counts being dismissed against it by the Court.  Accordingly, the following claims remain pending against HBC: federal and state claims of sexual harassment/hostile work environment in violation of Title VII and the Pennsylvania Human Relations Act ("PHRA"); and claims under Pennsylvania state law for civil conspiracy, intentional infliction of emotional distress, and negligence.

Defendant HBC has filed the instant motion for summary judgment, in which it contends that Plaintiff is unable to establish a *prima facie* case on either her Title VII and/or PHRA claim.

**BACKGROUND**

The facts relevant to this discussion, and viewed in the light most favorable to Plaintiff, are as follows.  Plaintiff began her employment with HBC in December 1996 when HBC acquired a facility in Meadowlands, Pennsylvania from Foxmeyer Corp.  Plaintiff had been employed by Foxmeyer since 1993, first at its Leetsdale facility and then in the summer/early fall 1996 she was transferred to the Meadlowlands facility.

At all times material to this litigation, HBC had a Sexual Harassment Policy.  Plaintiff received a copy of the policy on at least four (4) separate occasions, including in 1997 at her new

hire orientation when the policy was reviewed.  In addition, the policy was posted at all times in the warehouse.  Pl. Depo. at 612; Plaintiff Acknowledgement; 1998 Memo from Human Resources.

Local 249 represented the employees at the Meadowlands facility during the time that Foxmeyer was the employer.  However, when HBC took over, Local 249 did not initially represent the employees.  On August 22, 1998, Local 249 and HBC entered into a collective bargaining agreement which remained in effect through the events surrounding this litigation.[1]

Jeffrey Lahew commenced his employment at the Meadowlands facility on December 1, 1996, as a temporary employee, and then became a regular employee.  From October 1998 through the summer of 2000, Lahew served as a committeeman for Local 249.  At no time was Lahew a supervisor of Plaintiff.

Plaintiff alleges that the sexual harassment began in February or March of 1997.  At that time, Plaintiff had volunteered for the Company's picnic committee.  Some employees were unhappy with HBC management and, because they believed that Plaintiff had a good relationship with management, they asked Plaintiff to discuss their complaints with management.  See Pl. Depo., at 83, 85, 92, 93.  Plaintiff testified that although the employees complained to her and wanted her to talk to management, the employees resented Plaintiff because they thought she was "sucking up" to the Company.  See Pl. Depo. at 83.

---

[1]     The Collective Bargaining Agreement had a term from August 22, 1998 through February 12, 2005.

Sometime in 1997,[2] Plaintiff reported these employee remarks to Jan Kish ("Kish"), Plaintiff's shift supervisor, and Larry Sevich ("Sevich"), Director of Distribution of HBC.  Kish considered the comments to be usual employee disgruntlement with the Company.  Sevich responded that "you can't make everybody happy."  Plaintiff agreed and did not pay further attention to the employee complaints.

Also around this same time, Plaintiff alleges that Barbara Hatton ("Hatton"), Plaintiff's co-worker, became upset when she learned that while she had to pay for her children to attend the Company picnic, Plaintiff did not have to pay for her children.  *See* Pl. Depo. at 90. Subsequently, Plaintiff learned from another co-worker, Bill Starr ("Starr") that Hatton was spreading stories regarding alleged sexual affairs between Plaintiff and supervisor Barry Jordan, and co-worker Becky Yarkofsky and a male co-worker.  *See* Pl. Depo. at 90.

Shortly thereafter, Plaintiff reported Hatton's conduct to supervisor Walt Durr ("Durr"). Durr investigated the incident, and interviewed Hatton as well as other employees who had heard the comments.  Within a week of Plaintiff's complaint, Hatton was given a formal warning by Durr and told to "keep her mouth shut."  Pl. Depo. 94-95; Hatton Depo. at 45-46.

In addition, Paul Stanney ("Stanney"), Warehouse Manager, informed Plaintiff of Hatton's reprimand and warning, apologized to Plaintiff, separated Plaintiff and Hatton on the warehouse floor, and told Plaintiff that if it happened again to let him know.  Pl. Depo. at 95.

During this same time period, Plaintiff also complained to Stanney that her car was being vandalized.  Pl. Depo. at 101-02.  Stanney told Plaintiff that he knew that other cars in the

---

[2]    Plaintiff testified that this conversation occurred at the Company car wash, but she did not specify when the car wash occurred.

parking lot were also being vandalized and that the Company was doing what it could to find out who was responsible.  Pl. Depo. at 102.

Plaintiff was then assigned to drops[3] with co-worker, Jeffrey Lahew.  In May 1999, Lahew yelled at Plaintiff and used offensive language because he was angry that Plaintiff "did not organize the totes in the order he felt was appropriate."  Pl. Aff. #51.   Plaintiff made a verbal complaint to Kish about Lahew.   The complaint led to a meeting with Plaintiff, Lahew, Kish, and John Drevitch, Local 249's steward at the time.  Kish issued a verbal warning to Lahew against any behavior that would be inappropriate for the workplace.

In August 1999, Plaintiff  alleges that Lahew again yelled at her using offensive language and threatening gestures when he observed Plaintiff taking an order from the middle of the stack.[4]  After this incident, Plaintiff made a complaint only to her  union business agent, Terry Mahoney.   By her own admission, she did not complain to HBC management.  *See* Pl's Depo. at 188.  Mahoney told Plaintiff that he had spoken to Lahew and warned him about his conduct. After this incident, Plaintiff was assigned to work in a different area from Lahew.

Between September 1999 and April 2000, Plaintiff alleges that a handful of annoying instances occurred, which included Lahew reaching around Plaintiff, walking in front of her, placing objects close to her face when asking Plaintiff a question, running his pallet jack close to her, and driving his car real fast in the parking lot in her general direction.  Pl's Depo. at 202-05, 209.  However, Plaintiff never brought any of these instances to the attention of management.

---

[3]     The job of "drops" consists of locating product, placing the product in a tote, and labeling the tote with the correct store number.

[4]     Numerous orders are placed in "stacks" on the replenishment table.  The proper procedure is to take the top order from the stack.

Additionally, Plaintiff alleges that Lahew was angry because she and two other co-workers were temporarily allowed to adjust their start times to accommodate child care issues. According to Plaintiff, Lahew commented that Plaintiff used sex to get this special treatment from management.  Pl. Depo. at 125.  Again, Plaintiff did not report this incident to management.

During this time period, Plaintiff also alleges that someone was taking her lunch from her locker.  At a shift meeting, all employees were warned that if management determined who was engaged in such misconduct that person(s) would be disciplined.

On April 29, 2000, the final and last incident at the warehouse involving Lahew allegedly occurred.   Plaintiff, along with Bernie Sisler ("Sisler") and Jill Zynosky ("Zynosky"), was assigned to fill boxes on the conveyor line.   Lahew came to the section and saw that some of the product had spilled.  He became agitated and starting screaming, using offensive language, at Plaintiff, Sisler and Zynosky, telling them that they were not performing their jobs correctly. Plaintiff, Sisler and Zynosky filed a grievance against Lahew with the union.  Plaintiff did not complain to management at that time.

On or about May 12, 2000, Plaintiff went to Carla Arnold ("Arnold"), Human Resources Manager for HBC, and requested a copy of the Company's Harassment Policy.  Arnold asked Plaintiff if she had an issue.  Plaintiff testified that initially she told Arnold "in a round-about way that I had a problem going on."  Pl's Depo. at 254.  Eventually, Plaintiff told Arnold about the April 29, 2000 incident involving Plaintiff, Sisler, Zynoski and Lahew.

Arnold immediately relayed Plaintiff's complaint to Sevich.  HBC conducted an investigation into the allegations filed by Plaintiff, during which over 20 employees were interviewed.   Plaintiff met with Sevich and was given a full opportunity to tell HBC every

incident that she alleged to have occurred.  During her meeting with Sevich, Plaintiff presented a written summary of all alleged past incidents, both reported and unreported to the Company. During the investigation, both Plaintiff and Lahew were held off work with pay and benefits.

At the conclusion of the investigation, HBC suspended Lahew for one week without pay for his general behavior toward other employees and management.  HBC, however, informed Plaintiff that it had been unable to substantiate any of Plaintiff's accusations of sexual harassment by Lahew.  On May 24, 2000, Plaintiff took a medical leave of absence from work and has never returned to HBC.[5]

### STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Thus, the Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).  The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion.  *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989) (*citing Liberty Lobby*, 477 U.S. at 249)). Further, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or

---

[5]     Beginning in approximately October or November of  2001, Plaintiff began working part-time at Kaufmann's as a sales associate.  At the time of her deposition in July 2003, Plaintiff was working at the Beaver Medical Center in a nursing assistant capacity.

mere suspicions in attempting to survive a summary judgment motion.  *Id.* (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  Distilled to its essence, the summary judgment standard requires the non-moving party to create a "sufficient disagreement to require submission [of the evidence] to a jury." *Liberty Lobby*, 477 U.S. at 251-52.


DISCUSSION

**1.      Claims of Sexual Harassment and Hostile Work Environment**

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).[6]  In order for a plaintiff to establish a hostile work environment, he or she must show harassing behavior "sufficiently severe or pervasive to alter the conditions of [her] employment." *Pennsylvania State Police v. Suders*, 542 U.S. 129, 124 S. Ct. 2342 (2004) (*citing Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22 (1993)).

In addition, an employee who seeks to demonstrate a constructive discharge, as does Plaintiff in the case at bar, must also show that "the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Id.*    In particular, the plaintiff must demonstrate that (1) she suffered intentional discrimination because of her gender; (2) the discrimination was pervasive and regular; (3) the discrimination  detrimentally affected her; (4)

---

[6]      Pennsylvania courts generally interpret the PHRA in accordance with its federal counterparts. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 104 (3d Cir. 1996). Therefore, the disposition of Plaintiff's Title VII claim applies with equal force to her PHRA discrimination claim.

the discrimination would have detrimentally affected a reasonable person of the same protected class in her position; and (5) there is a basis for respondeat superior liability. *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 295 (3d Cir. 1999*)*.

In determining whether an environment is sufficiently hostile or abusive, courts must look to the totality of the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). The conduct "must be extreme to amount to a change in the terms and conditions of employment." *Id*.

For this Court to conclude that Plaintiff had been constructively discharged as a result of a hostile work environment, she bears the burden of establishing that the allegedly harassing conduct created working conditions so unpleasant that a reasonable person in her position would have resigned. *Gray v. York Newspapers, Inc*., 957 F.2d 1070, 1079 (3d Cir. 1992). But, even if the Court assumes that Plaintiff's allegations and "resignation" were reasonable in satisfaction of the first four elements, Plaintiff must also establish that respondeat superior liability exists in order for her claim of sexual harassment to survive summary judgment.

The standard of employer liability under Title VII varies depending on whether the alleged harasser was a supervisor or merely a co-worker. *See, e.g., Faragher v. City of Raton*, 524 U.S. 775 (1998). The standard to establish sexual harassment by a co-worker proceeds under a theory of respondeat superior. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1478 (3d Cir. 1990). In order to impose liability on an employer for a co-worker's sexual harassment (where the harassing employer is not in a supervisory position over the victim), the plaintiff must demonstrate that " 'the defendant knew or should have known of the harassment and failed to

take prompt remedial action." ' *Kunin v. Sears Roebuck and Co.*, 175 F.3d 289, 293-94 (3d

Cir.1999) (*quoting Andrews*, 895 F.2d at 1482.)  This is not an affirmative defense, but rather the

burden of the plaintiff. *See Kunin*, 175 F.3d at 294.

      If Plaintiff can demonstrate that HBC's management-level employees had actual or

constructive knowledge about the sexually hostile environment allegedly created by Lahew and

other co-workers and failed to take prompt and adequate remedial action, HBC would be liable.

*Andrews*, 895 F.2d at 1486.

      As explained in detail above,  Plaintiff alleges numerous incidents of co-worker

harassment, many of which she admittedly did not report to her supervisors.[7]  Because Plaintiff

never notified her supervisors of these incidents,  the Court finds and rules that HBC cannot be

held liable under respondeat superior for incidents of which it was never made aware.

      Conversely, the record reflects that Plaintiff advised HBC on four occasions about the

conduct of Lahew and/or her other co-workers.  However, Plaintiff has failed to produce

sufficient evidence beyond her allegations and her deposition testimony to prove that

management-level employees had actual or constructive knowledge about the existence of a

sexually hostile environment <u>and</u> failed to take prompt and adequate remedial action. *Andrews*,

895 F.2d at 1469. In contrast, HBC satisfies its high burden to show that it took adequate

remedial measures. *Id.*

---

    [7]       The unreported incidents include the August 1999 incident involving Lahew
when he allegedly yelled at Plaintiff because she incorrectly took an order from
the middle of the stack.  Plaintiff reported this incident only to her Union;  the
"annoying" incidents which occurred between September 1999 and April 2000
which Plaintiff never reported to management; and Lahew's comments allegedly
made when Plaintiff was allowed temporarily to adjust her start time to
accommodate child care issues.

The summary judgment record shows that HBC had a sexual harassment policy which was given to Plaintiff on at least four occasions and which was posted at all times in the warehouse.

Furthermore, the summary judgment record demonstrates that each time management-level employees were made aware of the alleged harassment, HBC took prompt and adequate remedial action.

For example, in 1997, when Plaintiff reported that Barbara Hatton was spreading stories about her regarding alleged sexual affairs, the incident was investigated and within a week of Plaintiff's complaint, Hatton was given a formal warning by the company.  Thereafter, Paul Stanney, the Warehouse Manager, apologized to Plaintiff and separated Plaintiff and Hatton on the warehouse floor.

When Plaintiff complained that her car was being vandalized, Stanney told her that other cars were also being vandalized and that the Company was doing what it could to find out who was responsible.

In May 1999, when Plaintiff made a verbal complaint to Kish about Lahew, a meeting was held and Lahew was issued a verbal warning.

As a result of the alleged April 29, 2000 incident involving Lahew, HBC conducted an investigation, which resulted in the one-week suspension of Lahew without pay for his general behavior toward other employees and management.  However, HBC was not able to substantiate any of Plaintiff's accusations of sexual harassment by Lahew.

For the reasons stated above, the Court finds and rules that no reasonable factfinder, with the evidence presented before this Court, could find that Plaintiff can establish a claim for a

11

hostile work environment.  Accordingly, summary judgment will be entered on Plaintiff's federal and state claims which allege sexual harassment and hostile work environment.

## II.     State Law Pendent Claims For Conspiracy, Intentional Infliction of Emotional Distress and Negligence

Plaintiff also alleges causes of action under Pennsylvania state law for conspiracy, intentional infliction of emotional distress, and negligence.  The Court of Appeals for the Third Circuit has held that if the federal counts of a Complaint are dismissed then the district court should "ordinarily refrain from exercising jurisdiction [over the state law claims] in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 195-96 (3d Cir. 1976).  *See also Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("Under Gibbs jurisprudence, where the claims over which the district court has original jurisdiction are dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.") Given that the Motion for Summary Judgment filed by Local 249 and Lahew will be granted on the federal claims in this case, and given that there are no extraordinary circumstances which would warrant the exercise of jurisdiction over the pendent state law claims, the Court will decline to exercise supplemental jurisdiction. Accordingly, Plaintiff's claims for conspiracy, intentional infliction of emotional distress, and negligence under Pennsylvania state law will be dismissed without prejudice. *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992) (once all federal claims have been dropped from the case, the case should either be dismissed or transferred to the Pennsylvania Court of Common Pleas pursuant to 42 Pa. Cons. Stat. Ann. § 5103(b)).

12

## CONCLUSION

Viewing the facts in the light most favorable to the Plaintiff, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff on her federal and state claims of sex discrimination.  Accordingly, summary judgment will be granted on Plaintiff's claims of sex discrimination.  Plaintiff's causes of action under Pennsylvania state law for conspiracy, intentional infliction of emotional distress, and negligence will be dismissed without prejudice.

An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MARLA SNYDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02:02cv0216 |
| | ) | |
| TEAMSTERS LOCAL NUMBER 249, | ) | |
| HBC SERVICE CORPORATION, and | ) | |
| JEFFREY LAHEW, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER OF COURT**

**AND NOW**, this 2nd day of  September, 2005, in accordance with the foregoing

Memorandum Opinion,  it is hereby **ORDERED**, **ADJUDGED, AND DECREED** as follows:

1.     The Motion For Summary Judgment filed by Defendant HBC Service

Corporation is **GRANTED** as to all claims of alleged sexual harassment and hostile work

environment in violation of Title VII and the Pennsylvania Human Relations Act; and

2.     The Pennsylvania state law claims of Plaintiff for conspiracy, intentional

infliction of emotional distress, and negligence are dismissed without prejudice forthwith.

BY THE COURT:

s/Terrence F. McVerry,
United States District Judge

cc:      James A. Ashton, Esquire
        500 Lewis Run Road
        Suite 227
        Pittsburgh, PA 15122

        John C. Brzustowicz, Esquire
        Day & Brzustowicz
        3821 Washington Road
        McMurray, PA 15317

        Robert O. Lampl, Esquire
        Email: rol@lampllaw.com

        Robert A. Eberle, Esquire
        Jubelirer, Pass & Intrieri
        Email: rae@jpilaw.com
        Elly M. Heller-Toig, Esquire
        Marcus & Shapira
        Email: ehtoig@marcus-shapira.com

        Raeann Burgo, Esquire
        Marcus & Shapira
        301 Grant Street
        35th Floor, One Oxford Centre
        Pittsburgh, PA 15219-6401

        Susan Gromis Flynn, Esquire
        Marcus & Shapira
        Email: sgflynn@marcus-shapira.com